IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW MUNIZ,

        Plaintiff,                       CV-06-120-ST

    v.                                OPINION AND ORDER

JEAN HILL, *et al.*,

        Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Matthew Muniz ("Muniz"), is an inmate in the custody of the Oregon Department of Corrections ("ODOC"), housed at the Snake River Correctional Institution ("SRCI"). Muniz filed this action on January 30, 2006, against the following defendants: Jean Hill ("Hill"), SRCI's Superintendent; Al Hannon ("Hannon"), Security Manager for SRCI's

1 - OPINION AND ORDER

Disciplinary Segregation Unit ("DSU"); R. Real ("Real"), Correctional Liutenant in SRCI's DSU; and L. Bourasa ("Bourasa") and C. Hand ("Hand"), Correctional Officers at SRCI.[1]

Pursuant to 42 USC § 1983, Muniz alleges that these defendants violated his constitutional rights in late 2005 and early 2006 by taking away his mattress from November 30 until December 29, 2005, denying him medical care necessitated by that deprivation, and refusing to respond to his inmate communication forms. As a result, Muniz seeks compensatory and punitive damages against each defendant.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Defendants have moved for summary judgment against each of Muniz's claims asserting that: (1) Muniz did not exhaust his administrative remedies regarding any claim other than the claim involving his mattress restriction; (2) defendants did not violate Muniz's constitutional rights; and (3) defendants are entitled to qualified immunity. On August 10, 2007, this court issued a Summary Judgment Advice Notice (docket #41) explaining the requirements for responding to a motion for summary judgment. For the reasons that follow, defendants' motion is granted and judgment will be entered in favor of defendants.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the

---

[1] The Complaint originally named three "John Doe" defendants, who were later identified as Real, Bourasa, and Hand in the First Amended Complaint (docket #9).

2 - OPINION AND ORDER

pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F2d 626, 631 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 631.

## UNDISPUTED FACTS

A review of the parties' fact statements and accompanying materials[2] reveals the following facts with respect to the events leading to the alleged constitutional violations:

Muniz is an inmate in ODOC custody, housed at SRCI. He was placed in the DSU at SRCI on September 8, 2005. Hicks Aff. (Ex. 103), Att. 3, p. 2; Myers Aff. (Ex. 102), Att. 2, p. 6. At that time, his property was inventoried, including a radio, radio earbuds, three batteries, and 37 photographs. Myers Aff. (Ex. 102), Att. 2, p. 6. Less than a month later, on November 3, 2005, Muniz filed a Notice of Tort Claim, alleging that the radio, earbuds, batteries, and 22 of

---

[2] Defendants have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit, declaration or page(s) of the deposition transcript. All other citations are to the exhibit number of the parties' submissions.

3 - OPINION AND ORDER

the 37 photographs were missing. *Id*. He sought $2,228.65, including $100.00 per picture, $27.00 for the radio and earbuds, and $1.65 for the batteries. *Id* at 7.

Real was assigned to investigate and respond to Muniz's Notice of Tort Claim. Myers Aff. (Ex. 102), Att. 2, p. 5. After noting that Muniz had received three property pulls since arriving at the DSU, Real ordered DSU floor staff to conduct a search of Muniz's cell. *Id*. On November 30, 2005, Bourasa ordered Muniz to submit to restraints so a search could be conducted. *Id*. Muniz refused. *Id*; First Amended Complaint, ¶¶ 10-11. Real then entered the DSU and, in response to Muniz's inquiry as to why a search had been ordered, told Muniz it was in response to a tort claim Muniz had filed regarding missing property. First Amended Complaint, ¶ 14. Muniz submitted to restraints. *Id*, ¶ 15.

During the ensuing "pat down" search, Bourasa felt something hidden in Muniz's underwear. *Id*, ¶ 16. Bourasa pulled Muniz's pants down in front of 23 other inmates in order to see if he could see what was hidden. *Id*, ¶ 17. Unable to find the hidden item, Bourasa pulled Muniz's pants back up and sent him to intake for a strip search. *Id*, ¶ 18. The radio earbuds were found in the crotch of Muniz's underwear. Myers Aff. (Ex. 102), Att. 2, p. 5. During the search of Muniz's cell, DSU staff also found Muniz's radio inside of his mattress, a battery, an envelope belonging to another inmate, carbon paper with a cartoon drawn on it, and miscellaneous other contraband items. *Id* at 12-14.

Upon his return to the DSU about an hour later, Muniz was placed in a cell with no mattress or pillow. First Amended Complaint, ¶ 21. Instead, he was given a "rubber security mat" to sleep on. *Id*, ¶ 22. Muniz contends that these rubber security mats are usually reserved for suicidal inmates or for brief periods of mattress restrictions. *Id*, ¶ 23.

Real filed a Misconduct Report charging Muniz with five rule violations including those related to property, contraband, disobedience of an order, fraud, and furnishing false information to employees. Myers Aff. (Ex. 102), ¶ 4.

On December 4, 2005, three days after being served with the Misconduct Report charges, Muniz filed a grievance contending that the "mattress restriction is not in accordance with the rules and ODOC policy and . . . is in retaliation [for] paperwork having to be done. . . ." Hicks Aff. (Ex. 101), Att. 4, p. 6. Muniz sought the return of his mattress, copies of all documents related to the incident so he could file a civil lawsuit, and asked that Real be held accountable. *Id*. Although Muniz stated that he "signed up for sick call [two times] due to a sore back [and] a cold that developed when [he] had to sleep on the dirty floor," Muniz sought no relief related to that allegation. *Id*.

Two days later, on December 6, 2005, Hearings Officer Ron Myers ("Myers") conducted a hearing on the disciplinary rules violations. Meyers Aff. (Ex. 102), ¶ 4. Myers recommended that three of the charges against Muniz be dismissed for lack of evidence and that Muniz be fined $50 for violations of the contraband and disobedience of an order rules. *Id*, ¶¶ 12-15.

On December 15, 2005, Real denied Muniz's December 4, 2005 grievance, stating that Muniz had violated rules prohibiting the intentional destruction of property by damaging his mattress to hide contraband, had filed a fraudulent tort claim in an attempt to recoup money for lost property that was not lost but instead was found in the search, and had in fact removed the property from his storage tote during previous property pulls. Hicks Aff. (Ex. 103), Att. 4, p. 7. The grievance response also noted that Muniz's mattress restriction would be removed on December 30, 2005. *Id*.

5 - OPINION AND ORDER

On December 20, 2005, Muniz filed a Grievance Appeal Form (2005.12.029A), again contesting the mattress restriction, this time arguing that because the hearings officer had dismissed the misconduct charge accusing him of destroying the mattress in order to hide contraband, the "mattress restriction [was rendered] void." Hicks Aff. (Ex. 101), Att. 4, p. 4. The Grievance Appeal also asserts that Muniz had sent at least seven inmate communication forms (kytes) to Real and Hannon.[3] *Id*. Asserting that the mattress restriction was a retaliatory action, Muniz asked that the restriction be removed. *Id* at 4-5.

On December 28, 2005, Acting Superintendent Judy Gilmore approved the final order on the misconduct charges, upholding the recommendation of the hearings officer that Muniz be found guilty of a Level III (Disobedience of an Order I) and a Level IV (Contraband II) violation. Myers Aff. (Ex. 102), Att. 2, p. 2.

On January 30, 2006, before adjudication of his grievance appeal, Muniz filed this case.

On February 8, 2006, Gilmore, on behalf of Hill, denied Muniz's grievance appeal. Hicks Aff. (Ex. 101), Att. 4, p. 5. That denial clarified that the mattress restriction was based on Muniz's act of hiding personal items within the mattress, citing ODOC DSU Rule #011, which provides that "a disciplinary-segregated inmate may be required to forfeit or be temporarily deprived of any service or activity when the inmate is using them to destroy or damage property [or] obstruct security . . . ." *Id*, quoting OAR 291-011-0064(1).

On February 16, 2006, Muniz filed a second Grievance Appeal Form (2005.12.029AA), this time arguing that the mattress restriction was not justified because the only contraband charge of which he had been found guilty was based on his possession of another inmate's

---

[3] Although the Grievance Appeal does not identify the subject matter of the kytes, they apparently stated that the mattress restriction was unjust, that Muniz wanted his mattress back, and that his civil rights were being violated. First Amended Complaint, ¶ 42.

6 - OPINION AND ORDER

envelope, not hiding his radio in his mattress. *Id* at 1; *see also*, Myers Aff. (Ex. 102), Att. 2, p. 23 (Hearing Transcript, p. 7). On May 16, 2006, Muniz's second grievance appeal was also denied. Hicks Aff. (Ex. 101), Att. 4, p. 2.

## ANALYSIS

### I. Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 USC § 1997e(a), requires that inmates who file suits concerning prison conditions must exhaust all remedies prior to the filing of a § 1983 action. The PLRA's exhaustion requirement is comprehensive and unyielding: "The Supreme Court has now authoritatively concluded 'that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Bennett v. King*, 293 F3d 1096, 1098 (9th Cir 2002), quoting *Porter v. Nussle*, 534 US 516, 532 (2002).

ODOC has a grievance system in place to address inmate complaints as set forth in OAR 291-109-0100 through OAR 291-109-0140. At the time of the events underlying Muniz's grievance, inmates could file grievances concerning the application or lack of administrative directives, unprofessional behavior or actions toward inmates by ODOC employees, and other oversights or errors affecting the inmate. OAR 291-109-0140(2) (2003). Inmates were required to file a grievance within 30 days of the incident giving rise to the complaint. OAR 291-109-0140(3)(b) (2003). Inmates could appeal the decision(s) or results of matters filed through the grievance process. OAR 291-109-0140(5) (2003). An appeal must have been filed within 14 days after the grievance findings. OAR 291-109-0140(5)(a)(B) (2003). The initial appeal went to the functional unit manager, who was required to respond within 30 days. OAR 291-109-0140(5)(b)(A) (2003). An inmate could then appeal the decision by the functional unit manager

7 - OPINION AND ORDER

to the Assistant Director.  OAR 291-109-0140(5)(b)(B) (2003).  The appeal to the Assistant Director must have been received within 14 days of the first grievance appeal response and the Assistant Director was required to respond within 30 days.  OAR 291-109-0140(b)(C) (2003).  The decision of the Assistant Director was final and not subject to further review.  OAR 291-109-0140(5)(b)(D) (2003).

Muniz did not file a timely grievance or pursue the appeal process for his claims stemming from the strip search and alleged lack of medical treatment for his back pain.  Because Muniz did not properly exhaust his administrative remedies regarding his strip search and back pain claims as required by the PLRA, defendants are entitled to summary judgment against both of those claims on that basis.

## II. Lack of Constitutional Violation

### A. Mattress Restriction

Although Muniz properly exhausted his claim regarding the imposition of the mattress restriction, that claim nevertheless fails because Muniz can prove no constitutional violation.  An inmate pursuing an Eighth Amendment violation must show "(1) that the deprivation he suffered was 'objectively, sufficiently serious;' and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place."  *Morgan v. Morgensen*, 465 F3d 1041, 1045 (9th Cir 2006), quoting *Farmer v. Brennan*, 511 US 825, 834 (1994).  Muniz can make neither of these showings.

In order to prevail on a conditions of confinement claim, a prisoner must prove that the condition imposed constituted an extreme deprivation amounting to a denial of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 US 337, 347 (1981).  "An institution's obligation under the eighth amendment is at an end if it furnishes sentenced

8 - OPINION AND ORDER

prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F2d 1237, 1246 (9th Cir 1982) (citations and internal quotations omitted). Muniz was not completely deprived of a mattress, but instead was provided a thinner sponge mattress in place of the usual foam-filled mattress normally given to DSU inmates. Muniz contends that the mattress restriction was only authorized for 24 hours, rather than 30 days. Response to Defendant's Motion for Summary Judgment (docket #48), p. 3. However, the issue is whether the imposition of the condition (whatever its duration) presented a "substantial risk of serious harm." *Farmer*, 511 US at 847 ("prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Muniz alleges that he signed up for sick call on multiple occasions (December 8 and 17, 2005, and January 21, 2006) which he relates to the change of mattresses. First Amended Complaint, ¶ 44. However, he acknowledges that he was simply provided Tylenol when seen by a doctor and does not allege any other adverse condition that was imposed on him in conjunction with the change in mattresses. *Id*, ¶ 47. This seriously undermines any Eighth Amendment claim. *See, e.g., Best-Bey v. Pennsylvania*, 2008 WL 161214, at *4 (ED Pa January 16, 2008) (discussing multitude of cases involving mattress restrictions in various confinement contexts and noting that other adverse conditions of confinement, in conjunction with floor sleeping, might create constitutional claim).

Moreover, the thrust of Muniz's claim is not that it caused him physical harm, but that defendants kept "rearrange[ing] the reasons for the mattress restriction." Hicks Aff. (Ex. 101), Att. 4, p. 1. Muniz's initial grievance, filed December 4, 2005, alleges that he "signed up for

9 - OPINION AND ORDER

sick call [twice] due to a sore back and a cold that developed when [he] had to sleep on the dirty floor." *Id* at 6. However, his two appeals to the grievance decisions do not mention medical issues at all, instead focusing on the source of the pictures he had in his possession and on the issue of whether the mattress restriction should have been removed once the disciplinary charges involving the mattress were dismissed. *Id* at 1, 3-4. Muniz's second appeal, filed on February 16, 2006, does not mention any physical harm flowing from the mattress restriction. Instead, he wanted defendants to admit they "screwed up" and made "mistakes" by not removing the mattress restriction sooner. *Id* at 1.

Accordingly, the record does not support the conclusion that the mattress restriction was sufficiently serious to support Muniz's Eighth Amendment claim.

Moreover, the mattress restriction was premised upon security concerns that Muniz hid contraband in the foam mattress, a fact which Muniz does not dispute. Muniz's foam-filled mattress was returned to him after 30 days. That was two days after Gilmore approved the final order on the misconduct charges, finding him guilty of two rule violations. These undisputed facts wholly undermine any claim that prison officials were deliberately indifferent to Muniz's safety in imposing the mattress restriction. Accordingly, Muniz's claim for an Eighth Amendment violation based on the mattress restriction fails as a matter of law.

### B. Due Process

Muniz also alleges that defendants violated his due process rights. First Amended Complaint, ¶¶ 20-43. The thrust of that claim seems to be that the mattress restriction should have been lifted between 10:00 p.m. and 6:00 a.m. daily and should have been lifted entirely once the charges of destroying his mattress were dismissed. *Id*, ¶¶ 23, 40. A claim under the Due Process Clause requires a showing of both "(1) a deprivation of a constitutionally protected

10 - OPINION AND ORDER

liberty or property interest, and (2) a denial of adequate procedural protections." *Biggs v. Terhune*, 334 F3d 910, 913 (9th Cir 2003) (citations omitted). Muniz's claim again founders on both fronts.

Muniz had no protected property interest in the DSU standard-issue mattress. Assuming that alone does not bar his claim, a disciplinary decision need only be supported by "some evidence" in order to satisfy the constitutional requirements of due process. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 US 445, 454 (1985). There is no question that the initial imposition of the mattress restriction was supported by the misconduct charges filed against Muniz. Muniz responds that the restriction should have been removed immediately upon the dismissal of the misconduct charges relating to the mattress.

Muniz had two procedural avenues available for lifting of the mattress restriction. First, the Oregon Administrative Rules require situational reviews of those inmates in the DSU. "An assessment will be made by a committee designated by the functional unit manager on each inmate in continuous disciplinary segregation at least every 30 days." OAR 291-011-0030(3) (2005). The committee is a Special Needs Inmate Evaluation Committee ("SNIEC") comprised of staff appointed by the functional unit manager that "review[s] special housing placements, special needs of inmates due to behavioral issues, and other issues as directed by each functional unit manager." OAR 291-201-0110 (2005). The removal of the mattress restriction imposed on Muniz took place after review by the SNIEC which determined that the 30 day restriction was sufficient and declined to impose any further sanction. Real Aff. (Ex. 103), ¶ 9.[4] Muniz has no claim that his due process rights were violated by the SNIEC review process because the record

---

[4] During late 2005, the SNIEC only reviewed the imposition of restrictions every 30 days, but since then the procedures of the SNIEC have changed to provide for weekly review. Real Aff. (Ex. 103), note 4; *see also* OAR 291-011-0064 (2008) ("Forfeiture of a service/activity will be reviewed weekly by the Special Needs Inmate Evaluation Committee.").

11 - OPINION AND ORDER

indicates that the imposition of the mattress restriction was in fact reviewed by the SNIEC and that the SNIEC declined to extend the restriction.

Second, ODOC's grievance process was available to and used by Muniz. While Muniz appears to contend that the mattress restriction should have been lifted immediately after the disciplinary hearing, the order adjudicating the misconduct charges (and dismissing certain of those charges) did not become final until December 28, 2005. The mattress restriction was removed two days later on December 30, 2005. Based on this time line, Muniz implies that the mattress restriction was in place for two days too long. However, as of December 28, 2005, Muniz's December 20, 2005 appeal of the grievance decision, in which Muniz for the first time claimed that the dismissal of the charge of destroying the mattress rendered defendants' "excuse for this mattress restriction void," remained pending. Hicks Aff. (Ex. 101), Att. 4, p. 4. Muniz may not have liked the decisions on his grievance and associated appeals, but he has no claim that the grievance process denied him adequate procedural protections or was not in fact followed. Thus, the record does not support any colorable claim for a due process violation.

## ORDER

For the reasons stated above, defendants' Motion for Summary Judgment (docket #37) is GRANTED.

DATED this 6th day of May, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

12 - OPINION AND ORDER